Let's move on to 21-1380CV, Patricia Cummings v. The City of New York, Daily News, Dr. Andrew Perry, and Larry McKelvey. And I understand that Ms. Cummings is present today, very good, and that we have attorneys for each of the four appellees, each of whom would like to speak for three minutes, is that correct? That's right, yeah, that's right Ms. Cummings, you get the appellant side. Sorry. No, that's fine. Get yourself settled, and then when you do get in front of the podium, just make sure that the microphones are lined up wherever you like, and I understand Ms. Cummings, you'd like to reserve two minutes of your 12 for rebuttal, right, so that means you'll have the clock now set for 10 minutes, at the end of 10 minutes we'll hear from the lawyers on the other side, and then we'll have you come back up and you'll get two minutes. So just keep an eye on the yellow light, it'll give you a warning when your time is getting close to running out, okay? Yes, Your Honor. And yeah, please proceed. Good morning, Your Honors, and may it please the Court. My name is Patricia Cummings, and I'm the pro se plaintiff appellant in the matter before you. The straightforward question presented to this Court is, did the lower court err when in dismissing the amended complaint and the motion for reconsideration and re-argument? On appeal, I am challenging the lower court's application of the law of the case doctrine in the pleading stage, the dismissal of the amended complaint, and the denial of the motion for re-argument and reconsideration. First, the lower court erred when it applied the law of the case doctrine as its rationale to dismiss the amended complaint. The law of the case doctrine is not found in any statute, and in any case in which it has been applied, it is within the summary judgment stage after there has been evidentiary discovery or after an appellate court has ruled on a matter and then has remanded back. In Arizona v. California, if the Court permits, the Supreme Court held, and I quote, the law of the case doctrine is a principle in which when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages of litigation within that case. This Court, in following suit opined in Fresnico v. H&R Block in 1999, and I quote, the law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. The original complaint was dismissed without prejudice, and an amended complaint was submitted. As a matter of law, that amended complaint is a revision of the previous, i.e., the original complaint, setting out the plaintiff's version of facts and specifying the damages within the pleading stage. As an amended complaint completely replaces and supersedes that previous complaint as it has done here. As a matter of law, the only pleading in front of the lower court were the four corners of that amended complaint, and the Court erred when it applied the law of the case in the pleading stage because it is a violation of the sanctity of the litigation process and it is prejudicial to the plaintiff. Second, the lower court erred when it dismissed the amended complaint. The amended complaint met the threshold to sustain the cause of action for defamation, defamation per se, libel, libel per se, slander, and slander per se. And the lower court dismissed this because the dismissal was predicated on the lower court's dismissal of the original complaint. And as previously stated, the original complaint was superseded by the amended complaint. So the lower court erred. As the dismissal of the amended complaint was predicated on the original's dismissal, we must look at page 30 of the court's dismissal of the original complaint, which it states, and I quote, for your honors, it is abundantly clear that the Daily News articles reported on official proceedings and they were fair and true reports of those proceedings. However, the lower court erred by affording privilege to the defendants. As a matter of law, there are exceptions to section 74 which would deny privilege. The exceptions to 74 included specific statements at issue considered in their context, suggest more serious conduct than suggested in the official proceeding, if the report has a different effect on the minds of the recipient than the actual truth, and if those opinions are based on false facts. The lower court erred by affording the privilege because it was demonstrated in the amended complaint that the Daily News reports, particularly the February 1, 2018 exclusive article, suggested more serious conduct than actually suggested in the official proceeding. Specifically, paragraph 107 of the amended complaint states, and I quote for the court, the evidence in Plaintiff's Classroom as reported by the Daily News and Ben Chapman never happened and was never the subject of the investigation. Additionally, in paragraph 119, it states, and I quote for the court, Defendant Chapman states as a fact that Patricia Cummings has asked black students to lie down on the floor in the classroom and then stepped on at least one of those students in a lesson on the Middle Passage. This is extensively false and egregiously false, your honors, and something that has never happened nor was I ever accused of doing. The actual and true allegation which was submitted to OSI, the Office of Special Investigations, for the Department of Education, was that a knee was pressed into a student's back, and this is evidenced within the OSI report that was annexed as an exhibit not just by me but by the defendants. The allegation asserted by the Daily News in their exclusive February 1, 2018 article and subsequent articles was that I singled out black students, told them to lie on the floor in a lesson in slavery, and then stepped on their backs to show them what slavery felt like. The allegation as asserted by the Daily News was never the allegation against me nor was it ever an allegation investigated against me. And as in Calvin Klein Trademark Trust states with section 74, 74 is not afforded protection if specific statements at issue considered in their context suggest a more serious conduct than that actually suggested in the official proceeding. And as cited in Gillian's v. New York Post, and I quote, the absolute privilege applies only where the publication is a comment on a judicial, legislative, or other official proceeding and is a fair and true proceeding report of that proceeding. The lower court cites freeze-write refrigeration on page 30 of the dismissal of the original complaint stating that privilege would be afforded before official investigation and would be considered a report of an ongoing investigation. However, freeze-write refrigeration is significantly different than this instant matter. Contrary to freeze-write refrigeration, February 1 article was released five months before the DOE reduced the investigation to writing and was two months after the Daily News published any information from the actual investigation. This was demonstrated in the amended complaint in paragraph 137 for your honors. Notably, as alleged, there was no official proceeding. On February 1, 2018, the basis of the Daily News articles in particular was the falsely asserted allegation that I singled out black students and walked on them. In contrast, the basis for the articles of freeze-write refrigeration are the repairs of the air conditioners and the investigation in which the Department of Consumer Affairs investigated in conjunction with the New York Times. So the New York Times article consisted of concrete facts and figures and quotes from that investigation. And most significantly, freeze-write states, and I quote for your honors, the absolute privilege applies only where the publication is a comment on a judicial legislative proceeding and is a fair and true report of that proceeding. This case was highlighted and demonstrated on page 15 of the opposition to the Daily News motions to dismiss and within my appellate brief. The allegation of the official proceeding was that a knee was pressed into a child's back. It was never that I singled out black students, told them to lie on the floor and allest in slavery and then stepped on their backs to show them what slavery felt like. Your honors, I'd also like to point out that the lower court erred when it provided privilege to the defendants because as a matter of law, if the report has a different effect on the mind than the recipient, then the actual proof privilege does not attach. On pages 31 and 32 of the opposition, embedded screenshots of the comments made by average readers of the Daily News articles demonstrated how average readers believed the false assertion that I walked on children. Surely evidencing an average reader's reaction to the defendant's series of articles, which began with the February 1st, 2018 article, demonstrates plausibility as to what was alleged in the amended complaint. Therefore, the lower court erred because privilege under 74 does not attach. Moreover, privilege does not attach when an opinion is based on disclosed facts and those disclosed facts are demonstratively false. Defendant Charlemagne and defendant Dr. Perry and the Hetchinger cited the February 1st Daily News articles as their basis and nexus of their communications, which contained the false assertion of fact. As Justice Scalia opined in RAV Petitioner v. St. Paul, Minnesota, and I quote Justice Scalia, the meaning of any expression can only be determined in context. Whether for example a picture or a sentence is obscene cannot be judged in abstract, but rather only in the context of its setting, its use, and its audience. Contextual charts were submitted to the court in all oppositions to help assist the court. Therefore, defendant Charlemagne and defendant Dr. Perry's communications contained provable, false, factual connotations, and as a matter of law, the defendants do not receive constitutional privilege as outlined in Milkovich v. Lorraine. Okay. Ms. Cummings. Yes, Your Honor. The way we've spent 10 minutes, you'd like to reserve two minutes for rebuttal. I'll give you the option. If you would like, you may use some of that two minutes now, or you can save it until after the lawyers for the other side have gone, but I'll give you that choice. How would you like to use those two minutes? Now or later? If I can use a minute now just to get to my third point, Your Honor, I would greatly appreciate that. Sure, and then we'll save one minute for later, and we'll start the minute from now. Thank you. The lower court erred when it denied the motion for reconsideration and re-argument. It is well settled that cases should be decided on their merits, and that the plaintiff should be given a reasonable opportunity to cure the formal defects in the complaint. In accordance with federal rule, the moving party must show one of the following to prevail on a Rule 59e motion, either an intervening change in controlling law, the availability of new evidence that was not available, or to correct a clear error of law and to prevent a manifest injustice. The lower court erred when it cited on page seven of the denial of the motion for re-argument and reconsideration that the newly offered documents do not contain any facts that would cure legal deficiencies. Your Honors, those were never proffered before the court. They were just explained in the motion on how they correlate to what's going on. And with that, it changes the nexus of what was put into the brief in regards to causes of action, and it can also add to the causes of action. So for a lower court to decide without being properly proffered in front of them is a clear error. Okay. So you've reserved one minute. Yes, Your Honor. We'll hear from you again. Okay. We'll hear from the other lawyers. So it looks like we have, let's see, is it Mr. Pollack for the City of New York? Is that right? Good morning, Your Honor. Actually, Matthew Leach for the Daily News, and Ben Chapman, we've agreed that I'll go first. Okay. You're going to go first for the Daily News, Mr. Leach. Yes. Okay. You have three minutes. Okay. Please proceed. Thank you, Mayor. Please support. I'd like to just briefly respond to the point that Ms. Cummings made initially about the law of the case doctrine. It's not particularly germane, but I want to point out that Ms. Cummings did not raise that issue in her opening brief, and therefore should be treated as abandoned by this court. She only first mentioned it in her reply brief so that we never had a chance to address it. I will say quickly, however, that she is incorrect on the substance of her argument. The law of the case doctrine is routinely applied by courts in this circuit in the context of a motion to dismiss an amended complaint where the initial complaint had also been dismissed. And I can provide courts with sites if the court would like. I'll just point out one, Weslowski v. Zbigniew, which was a Southern District case in 2015, 96 F. Sup. 3rd, 308, had a series of string sites in it applying law of the case doctrine in this context. In any event, I don't believe it's particularly relevant because the court can affirm on any grounds and on the merits, the decision here should be affirmed as well, even if the law of the case application by the district court judge was incorrect. On the substance, this is a clear case where Section 74 applies. The Daily News articles in question reported on the investigation by the Office of Special Investigations. They reported on the underlying allegations that led to the investigation, and they reported on the outcome of the investigation. The reports were substantially accurate, and that's the test. It doesn't have to be precisely accurate. It has to be substantially accurate such that the report does not have a different effect on the mind of the reader than would the literal truth. We submit that as precisely the case here. Ms. Cummings makes three arguments for why Section 74 does not apply. First, she says that there was no official proceeding at the time of the first Daily News article. That is simply not correct. The allegations were initially reported to the Office of Special Investigations on January 18th, 2018, which was several weeks before the Daily News article. There was already an in-school investigation, which resulted in Ms. Cummings being disciplined by the principal prior to the Daily News article, and the OSI investigation was underway and Ms. Cummings was informed of the investigation on the afternoon of February 1st by her own admission and her pleadings, and the Daily News article came out on the evening of February 1st. So there's no question that this was reporting on an ongoing investigation, and in any event, courts have held that allegations leading to an investigation are properly covered by Section 74 as well. So that argument really doesn't apply here. She also alleges that the first Daily News article alleged more serious conduct than what actually occurred, and if you look at Ms. Cummings' opening brief, what she really focuses on is the statement that she was accused of stepping on students. We acknowledge that is not the precise language in the allegations, however, we submit it is substantially accurate. If you look at the allegations as described in the OSI report, you had an allegation that Ms. Cummings had several students sit closely together on the floor, and that she then used her knee, her feet, or her hands to push them closer together. I see that your red light is on, and I thank you for your argument, and let's see who is going to speak next on the other side. I see we've slid over into the afternoon, so good afternoon, Your Honors, and may it please the Court. My name is Michael Griego from Greenberg Chord in Albany, New York. I'm representing Appellant Leonard Larry McKelvey, professionally known as Charlemagne the God, and the statements that are alleged to be actionable that were spoken on the broadcast airways by my client can be found in paragraph 145 of the amended complaint, which is in the appendix to the appellant's brief, pages 303 to 307. They're identical to the statements that were initially alleged to be actionable in the original complaint. Your Honor, we submit that the district court correctly determined that Mr. McKelvey's statements were protected and immunized from defamation or other tort liability by the constitutional opinion privilege. This court has made it repeatedly plain that that determination is a question of law that turns on an evaluation, a contextual determination of several factors and variables. First, whether the language has a precise meaning that is readily understood. Counsel for the government in the preceding case in discussing the jury instruction issue represented to the court that bias is the lens through which we view the world. I think that's correct, and that's really the point that Mr. McKelvey was making when he stated on the air that the appellant was a racist based on her reported conduct with the reenactment of the Middle Passage incident during her seventh grade social studies class. To accuse somebody of being a racist means you're making a personal subjective assessment of their heart and their mind, what's actually going on in the synapses between their ears. It's necessarily and inherently a personal, non-verifiable, subjective evaluation of someone's motives. It's unquestionably an expression of opinion rather than an assertion of fact. We provided a string cite to the court at footnote 13 of page 16 of our brief. Numerous courts across the country have found that use of the term racist qualifies as protected speech under the First Amendment because it's an opinion. The second part of the analysis looks at the full context of the communication. Two dimensions are relevant here. Charlemagne spoke in what's known as the donkey of the day segment, which is where it's dedicated to a freewheeling, no holds barred discussion where he mocks or criticizes certain people or events du jour. For those of us of a certain vintage, it's like the Andy Rooney show at the end of 60 Minutes where Andy Rooney would riff and pontificate, that's what Charlemagne was doing here. Clearly, that indicates that the viewers are expected to hear opinionated commentary rather than fact. The second part of this is the context here was saturation news coverage throughout the metro area as well as internationally. Everyone understood that he was commenting on public affairs. Finally, I would make the point that the nature of the language employed exaggerated rhetorical hyperbole, using the terms cracker-ass cracker, white devil, heavy on the helmets, clearly signals that this was protected opinion rather than assertions of fact. Thank you, sir. Thank you, Your Honor. Now, who are we hearing from next, Mr. Pollack or Mr. Lawler? Mr. Lawler. Mr. Lawler. And you are appearing on behalf of? Of Dr. Andre Carty and the Hechinger Institute on Education and Media. I'm just going to move this up a little bit. Good afternoon, Your Honors. May it please the Court. Joseph Lawler from Haines and Boone. Why don't you tilt the microphones up? Perfect. Is that better? Yes. Thank you. Joseph Lawler from Haines and Boone for Dr. Andre Carty and the Hechinger Institute on Education and Media. As among the many appellees in this case, the Hechinger defendants are uniquely situated because they are not mentioned in appellant's brief at all. Therefore, this Court should affirm the district court's decision on waiver grounds alone without need to address the substantive arguments raised below. In this circuit, issues not sufficiently argued in the briefs are considered waived. That's also reflected in Rule 28A that requires a statement of the issues on review and a concise argument in the appellant's brief. Here, the appellant's brief does not mention the Hechinger defendants a single time. It makes zero reference to any alleged error in the district court's decision with respect to the Hechinger defendants. And this isn't a purely technical concern. The waiver rule is enforced against pro se litigants, including a case from this court in 2021, Green v. Department of Ed. And the reason is that as part of the appellate process, the court needs to be informed of the issues on which it should brief its opposition. To be clear, this isn't an oversight by appellant. She didn't raise in her reconsideration motion below when represented by counsel any complaints about the district court's decision to dismiss the Hechinger defendants. And in a motion filing to this court after the appellate brief was filed, appellant said that the Hechinger defendants are not parties to this appeal and the dismissal of the claims against the Hechinger defendants is not before this court. That's document number 71, page 2 on this court's docket. So as a result of this waiver, the district court's decision to dismiss the Hechinger defendants from this proceeding should be affirmed. If the court does reach the substantive merits of the district court's decision, it should also affirm the district court properly determined that the statements by Dr. Perry were unactionable opinion. Dr. Perry is a widely respected scholar whose academic writings concentrate on race, structural inequality in urban schools, and he was writing in the Hechinger Report, which is a publication at Columbia University that provides a platform to discuss inequality and innovation in education. The thrust of the article that's at issue, which isn't even included in appellant's filings, is that colleges and education and teacher certification programs should do more to address the psychological bases of racism, patriarchy, and white privilege. Agree or disagree, that's Dr. Perry's opinion and that's the thrust of his article. Dr. Perry only mentions appellant in the context of a link to the Daily News article and Dr. Perry's column came out almost a week after the Daily News article, does not purport to have any new factual allegations, and reflects his opinions on race and education. And the district court's opinion should be affirmed for that reason as well. Thank you very much, and I understand we have Mr. Pollack here. Mr. Pollack, you may proceed. Thank you. Good afternoon, your honors. Ben Pollack, Assistant Corporation Counsel for the Municipal Defendants. Because Ms. Cummings was a probationary employee, she could be terminated for any reason or no reason. Her termination was proper based on her performance and her lack of judgment and no liability may stem from it. Because my time is so short here and there's so many claims against my clients, I'll reserve the remaining time for any questions this court may have for specific claims. No, and as you know, we have all the briefs and most of our decision is made on the briefs and the oral argument is only to supplement any last items that really come up. Unless there are any particular questions. Thank you. Thank you, your honors. We ask that this court affirm and we'll rest on the briefs. Thank you very much. Ms. Cummings, you have reserved a minute. And as I said just a minute ago, of course, we have all the arguments that the parties have put in the papers and we will continue to study them. But if there's any last thing that you would like to add in this one remaining minute, we are happy to hear. Thank you. I would like the court to, I would like to point out to the court the case of Ross v. Davis in which that case states that language needs to be understood within its context. And if there are different meanings towards different words depending on within its context, it's not up for the court to decide what those meanings are. It's up for the trier of fact. And that is in rebuttal to defendant Charlene Meen and to the Hutchinson jury court. But I blame my argument on the court. Okay. Thank you very much. We thank you for coming today. As we have said with all of the cases today, we reserve decision, we'll go back, the judges talk about this and we will decide and at some point in the future there will be written decision in this and all the other cases today. I will note for the record that we also on the calendar today have Jesus Mendez v. United States of America 21-1536 PR. That case is on submission and for the record we also reserve decision in that case. So again, we thank you very much for coming today and the court will stand adjourned. I would ask the courtroom deputy to gavel us out. Court stands adjourned.